**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 96-10833
(Summary Calendar)

JOHNNY BANDA,

Plaintiff-Appellee,

versus

BORDEN, INC.,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas
(3:94-CV-1926-T)

October 21, 1997

Before DAVIS, EMILIO M. GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

Johnny Banda ("Banda") brought suit against Borden, Inc. ("Borden") alleging violations of

the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.  A jury found in favor of

Banda and awarded $73,000 in compensatory damages, back wages and front wages.  Borden appeals

the denial of its motion for judgment as a matter of law asserting that Banda was not a disabled

person within the meaning of the  ADA, or in the alternative, Banda was not able to perform the

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in  5TH CIR. R. 47.5.4.

essential functions of his job, with or without reasonable accommodation. After reviewing the record, we conclude that as a matter of law Banda did not prove a violation of the ADA by a preponderance of the evidence. For the foregoing reasons, we reverse the jury verdict and render a judgment in favor of Borden, Inc.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

The facts of this case are undisputed. Borden is in the business of processing and packaging milk and milk products for delivery to branch locations and to retail accounts. Borden hired Banda on March 23, 1977 to serve as a transport driver in the Dallas facility's transport division. Banda was responsible for driving an 18 wheel tractor-trailer refrigerator on different delivery routes. During the period of Banda's employment, Borden operated two different types of routes -- drop/hook routes and driver unload.[1]

Beginning in 1978, Banda's primary job assignment entailed driving a refrigerated tractor-trailer on a delivery route known as the Corsicana run. On or about February 4, 1993, Banda suffered an on-the-job back injury. On March 2, 1993, he sought medical treatment and was released to return to work with a light-duty limitation.[2]

Upon his return to work, Banda requested that he be assigned the Minyard warehouse route, a drop/hook route.[3] Banda's request was granted, however two weeks later, he was reassigned to the Waco drop/hook route. After driving the route one time, Banda complained of back and leg pain

---

[1] On drop/hook routes, the driver left a loaded trailer and returned to the Dallas facility with an empty trailer; the driver was not required to unload the trailer. The driver's physical activity is limited to turning a hand crank that lowers the trailer's landing gear.

[2] Banda was prohibited from lifting more than ten pounds, and cautioned to avoid repeated lifting, bending, stooping, or squatting. However, Banda's driving was not prohibited or restricted in any way.

[3] The distance between the Borden facility and Minyard's warehouse was approximately 45 miles.

and numbness in his left foot. Once again, Banda sought medical treatment and was released to return to work with the limitation that he not lift over 20 pounds, no stooping, bending, or standing for long periods of time. On April 2, 1993, Banda was instructed not to return to work for four (4) weeks. Subsequently, Banda underwent surgery to repair a herniated disc in his back and did not return to work until November, 1993. Banda was released to return to work without restrictions.

On Monday, November 8, 1993, Banda returned to work and was assigned the Minyard run. On Tuesday, November 9, 1993, Banda drove the Waco drop/hook route. However, Banda did not report to work on Wednesday, November 10, 1993. Instead, Banda reported to his doctor who recommended additional treatment and instructed Banda not to return to work until he had been re-evaluated. Banda did not attempt to return to work until he was released by his doctor on April 12, 1994. On that day, Banda provided Borden with a copy of his release.[4] In an attempt to ascertain Banda's employment options, Borden inquired into the extent of Banda' s injuries. Several weeks later, Banda provided Borden with documentation from his doctor indicating that his injuries were permanent. After several discussions, Borden determined that Banda was unable to perform the essential functions of a transport driver.

Banda requested to be returned to the Minyard route, however, Calvin Ross, Banda's supervisor expressed concern over Banda's ability to perform the route or perform any of the duties

---

[4] The release form provided that Banda: (1) was limited to truck hauls less than one hour in duration; (2) could not work in rooms where the temperature was less than 68 degrees Fahrenheit; and (3) no lifting, pushing, or pulling more than 40 pounds

in the transportation division.[5] On May 6, 1994, Borden offered Banda an order filler position in the milk plant.[6] Banda refused the job offer.[7]

On September 8, 1994, Banda filed suit against Borden alleging employment discrimination in violation of the ADA. Borden filed a motion for summary judgment, however, the district court denied the motion. At the close of Banda's evidence and at the end of the trial, Borden moved for a judgment as a matter of law; the district court denied the motions. The jury returned a verdict in favor of Banda, awarding him $20,000 in compensatory damages, $35,000 in back pay, and $18,000 in front pay. The district court also ordered Borden to pay $88,308.39 in costs and attorney's fees. Borden timely appealed.

## DISCUSSION

We review de novo the denial of a motion for a judgment as a matter of law, applying the same legal standard as did the trial court.[8] *Wheat v. Pfizer*, 31 F.3d 340, 342 (5th Cir. 1994). "We consider all of the evidence 'in the light and with all reasonable inferences most favorable to the party opposed to the motion.'" *Garcia v. Woman's Hosp. of Texas*, 97 F.3d 810, 812 (5th Cir. 1996) (*citing Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc)). If the facts and

[5] On September 26, 1994, the Minyard's warehouse route was eliminated and replaced by the Minyard's store route. The Minyard's store route is a driver-unload route consisting of approximately 50-55 stores. One work day involves at least two trips, with deliveries to 3-4 stores per trip.

[6] The order filler position entailed watching a machine that fills plastic jugs with milk. The position did not involve truck driving, working in the cold, or lifting, pushing or pulling more than 40 pounds. However, the position would have required Banda to take a pay reduction.

[7] On May 1, 1995, Banda was hired by Kaywal Transportation as a owner/operator truck driver. Banda is able to drive routes of three hours and is compensated at a rate of $0.77 cents per mile driven.

[8] Banda contends that Borden did not properly preserve the issues presented for appeal and as such, our review should be restricted to "whether there is any record evidence to support the jury verdict." We disagree. A review of the record reveals that Borden articulated the same arguments advanced on appeal as it did in its motion for a judgment as a matter of law. Therefore, we review the district court's denial of the motion de novo.

inferences point so strongly and overwhelmingly in favor of the moving party that the reviewing court believes that reasonable jurors could not have arrived at a contrary verdict, then we will conclude that the motion should have been granted. *Id.*

On appeal, Borden asserts that the district court erred in denying its motion for a judgment as a matter of law, specifically arguing that Banda failed to establish that he was disabled within the meaning of the ADA, i.e., that Banda failed to show a significant restriction in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. Borden also asserts, in the alternative, that Banda failed to establish that he was a qualified individual within the meaning of the ADA.

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942 (5th Cir. 1994); *Bridges v. City of Bossier*, 92 F.3d 329 (5th Cir. 1996), *cert. denied*, --- U.S. ---, 117 S. Ct. 770 (1997). Discrimination includes failing to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business.[9] *Price v. Marathon Cheese Corp.*, 119 F.3d at 336. The ADA defines a "disability" as either: (1) a physical or mental impairment that substantially limits one or

_____

[9] We note that this court has held that "an employer does not necessarily regard an employee as having a substantially limiting impairment simply because the employer believes that the employee is incapable of performing a particular job. Instead, an employer regards an employee as substantially limited in his ability to work by believing that the employee's impairment forecloses the general type of employment involved." *Marathon*, 119 F.3d 330, 336 (5th Cir. 1997) (quoting *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 192 (5th Cir. 1996)).

more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. *Ray v. Glidden Co.*, 85 F.3d 227 (5th Cir. 1996); 42 U.S.C. § 12102(2).[10] It is undisputed that Banda suffers from back injuries and that Borden declined to reinstate him as a transport driver, thus the threshold issue in this case is whether under the ADA Banda is disabled because he is substantially limited in the performance of the major life activity of working.

"Substantially limits" has been interpreted to mean one is (1) unable to perform a major life activity that the average person in the general population can perform; or (2) significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity. *Foreman v. Wilcox*, 117 F.3d 800, 805 (5th Cir. 1997). The ADA does not define "major life activities," therefore we have consistently referred to the EEOC regulations which provide that major life activities mean functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *Bridges*, 92 F.3d at 332. Banda argues that he was substantially limited in the major life activity of working.[11] However, in regards to working, the EEOC regulations specifically provide that "the term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having

---

[10] No issue was submitted to the jury regarding the questions of whether Banda had a record of impairment that substantially limited a major life activity, whether Banda had a history of having such an impairment, or whether Banda was regarded as having such an impairment.

[11] Alternatively, Banda asserts for the first time on appeal that he is disabled in the major life activities of sitting and lifting, however, this court will not consider arguments on appeal that were not presented to the trial court. *See Garcia v. Excel Corp.*, 102 F.3d 758, 759 (5th Cir. 1997).

comparable training, skills, and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.*

Our decision today, is guided by our recent holding in *Foreman v. Babcock & Wilcox Co.*, *supra*. In *Foreman*, plaintiff, an expeditor,[12] underwent surgery for the installation of a pacemaker. Upon plaintiff's return to work, he was medically restricted from working within six feet of any welding equipment and prohibited from working within 40-50 feet of the power lines which ran through the shops. Thus, plaintiff was effectively precluded from working in the shop areas and as such, precluded from working as an expediter. Plaintiff brought suit against his employer alleging that the employer had discriminated against him in violation of the ADA since it refused to allow him to return to work as an expediter or reasonably accommodate him with a new position.[13] Noting that plaintiff was disqualified from working as an expediter, we concluded that there was substantial evidence that plaintiff was fully capable of performing a variety of other positions. *Id.* at ---. In fact, we stated that "'an individual is not substantially limited in working just because he or she is unable to perform a particular job for one employer, or because he or she is unable to perform a specialized job or profession requiring extraordinary skill, prowess, or talent.'" *Id.* Thus, we held that because the evidence overwhelmingly demonstrated that the plaintiff was limited in the performance of a singular, particular job, a jury could not reasonable find that he was substantially limited in the major life activity of working, as contemplated by the ADA. *Id.*

---

[12] An expeditor is responsible for making deliveries of necessary materials and supplies to various welding shops. Each shop contains welding machines and electrical substations that are used in the construction of boilers. Expediters also unload trucks, receive materials, work on computers, and store inventory.

[13] Foreman argued that he should be allowed to return to work as either a level 7 expediter, the position that he had previously held, or be given another position of comparable pay. The employer responded by saying that it could not offer Foreman the requested positions because the positions either did not exist, were not available, or were unavailable as a result of the seniority provisions articulated in the company's collective bargaining agreement.

The case *sub judice* is amazingly similar. Banda's doctor expressly restricted Banda from driving delivery routes in excess of one hour and working in rooms where the temperature was below 68 degrees. In addition, Banda was prohibited from lifting, pulling or pushing more than 40 pounds. Though these medical restrictions effectively preclude Banda from performing the various duties of a transport driver, they do not preclude him from the major life activity of working. Borden offered Banda a lower-paying position that fit squarely within his medical restrictions and he rejected the offer. Moreover, since the events giving rise to this situation, Banda has become gainfully employed as a driver for another company. Thus, we find no evidence upon which a reasonable jury could have found that Banda's back condition significantly restricted his ability to perform either a class of jobs or a broad range of jobs. *See id.* Accordingly, Banda has not shown that he was disabled within the meaning of the ADA.

## CONCLUSION

Because we find that the district court erred in concluding that Banda had produced sufficient evidence that he was disabled within the meaning of the ADA, we REVERSE the district court's denial of Borden's post-trial motion for a judgment as a matter of law. Because we further find that the evidence is insufficient to support a finding of disability as defined by the ADA, we RENDER judgment for Borden.

REVERSED AND RENDERED.